IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MPC FRANCHISE, LLC, and<br>MP CLEARY, INC.,<br><br>      Plaintiffs<br>v.<br><br>BRENT TARNTINO.<br><br>      Defendant.<br><br><br> | CIVIL ACTION NO. 11-cv-6310 |

BRENT TARNTINO and PUDGIE'S PIZZA,
CORPORATION – HORSEHEADS, INC.,

      Counterclaim Plaintiffs
v.

MPC FRANCHISE, LLC, and
MP CLEARY, INC.,

      Counterclaim Defendants.

## RULE 56 STATEMENT OF MATERIAL FACTS

Pursuant to Fed.R.Civ.P. 56 and Local Rule 56(a)(1)-(2), Plaintiffs and Counterclaim

Defendants MPC Franchise, LLC ("MPCF") and MP Cleary, Inc. ("MPCI"), submit the

following statement of material facts which are not at issue.

**The Early Years of the Pudgie's Pizza Restaurant Franchise System**

1. The first Pudgie's Pizza restaurant was opened in Elmira, NY in 1963 by "Pudgie"

Charles Cleary and other members of the Cleary family.  (David Cleary Dep. p. 29,

ln. 12 –22, A0008).

2. This location is currently known as Pudgie's Northside and is independently owned and operated by a party not present to this suit. (Tarntino Dep. p. 52, ln. 20-25, A0038).

3. A second location, currently known as Pudgie's Southside and owned by the Plaintiffs ("Plaintiff's Pudgie's"), was opened in 1964 by Michael Cleary Sr. and his brother Francis Cleary. (See Store Opening Dates, A0042).

4. The Cleary family began to expand using a franchise system and formed Pudgie's Pizza Franchising Corporation ("PPFC") to begin offering and selling Pudgie's Pizza franchises.  (David Cleary Dep. p. 26, ln. 10-21, A0007).

5. PPFC registered the Pudgie's service mark (the "Mark") with the United States Patent and Trademark Office ("USPTO") in 1978. (Defendant's Answer, ¶ 78, Docket 8).

6. In the early 1990's, there were somewhere between twenty-eight and thirty-two franchised Pudgie's Pizza restaurants.  (David Cleary Dep. p. 27, ln. 5 –11, A0007).

7. One of these franchises was started by Bernadette Tarntino (the Defendant's mother and Francis Cleary's sister) on July 15, 1973 in Horseheads, NY, which is north of Elmira ("Defendant's Pudgie's"). (Defendant's Pudgie's Franchise Agreement, p. 1, A0043).

8. Defendant's Pudgie's is currently owned and operated by Counterclaim Plaintiff Pudgie's Pizza Corporation – Horseheads, Inc. ("PPC Horseheads"). (Tarntino Dep. p. 11, ln. 9-23, A0028).

9. Another Pudgie's Pizza restaurant was opened in Elmira Heights, NY in 1970 ("Pudgie's Elmira Heights") but this Pudgie's went out of business in the early 1990's. The manner in which the other Pudgie's in the immediate area would

eventually share the business in Elmira Heights would become a point of contention and forms the impetus of this lawsuit.  (See Store Opening Dates, A0042; David Cleary Dep. p. 61, ln. 6 –10, A0016).

**PPFC's Registration of the Mark is Abandoned, PPFC is Dissolved, and the Existing Pudgie's All Become Independent Restaurants**

10. PPFC's registration of the Mark with the USPTO was cancelled for abandonment in 1985 when PPFC inadvertently failed to file a declaration. (Defendant's Answer, ¶ 79, Docket 8).

11. In 1990, Michael Cleary, Sr. formed MPCI to operate Plaintiff's Pudgie's. (MPCI Corporate Documents, A0061-A0063).

12. In 1990, Michael Cleary, Sr. died and nothing was done regarding the assignment of common law ownership interests in the Mark which PFFC had accrued. (David Cleary Dep. p. 25, ln. 6-8; p. 26, ln. 8-11, A0007).

13. PFFC was dissolved in the early 1990's.  (Id. p. 26, ln. 18 – 21, A0007).

14. Thereafter, no Pudgie's was a franchise – all became independent restaurants. (Id. p. 26, ln. 2-3, A0007).

15. Therefore, only in the early 1990's at the moment when PFFC was dissolved did Defendant's Pudgie's restaurant begin to operate as an independent restaurant and not as a franchisee; only then did her restaurant begin to use the Mark in commerce on its own behalf rather than as a franchisee.

**Arthur Treacher's Registers the Pudgie's Mark**

16. In 1982, another company, Arthur Treacher's, Inc. ("Arthur Treacher's") started using the Pudgie's name in connection with Pudgie's Famous Chicken restaurants in

the New York City metropolitan area. (Arthur Treacher's Trademark Registration, A0064).

17. Arthur Treacher's applied for and on April 30, 2002 was duly granted a trademark registration by the USPTO for the Mark for "Restaurant and carry out restaurant services." (Id.).

18. Arthur Treacher's interest in the Mark was subsequently assigned to PAT Franchise Systems, Inc. ("PAT") when it acquired Arthur Treacher's in 2002. (See Trademark Assignment Abstract of Title, A0065).

19. In 2008, the entire interest in the Mark was assigned to TruFoods, LLC, which still owns national rights to the Mark today. (Id.).

**MPCI Licenses Its Own Mark Back From TruFoods and Starts Its Own Franchise**

20. On July 19, 2004, MPCI decided to enter into a license agreement with PAT which granted MPCI a non-exclusive, perpetual, royalty free, nationwide license to use and license others to use the Mark (License Agreement between PAT and MPCI, A0066-A0071).

21. MPCI paid PAT a one-time fee of $37,500 for the license. (Id. at ¶ 4, A0067).

22. According to their agreement, in the event that PAT decides not to pursue litigation which affects MPCI, MPCI has the right to commence the litigation at its own expense. (Id. at ¶ 8, A0068).

23. On October 22, 2009, David and Robert Cleary formed MPCF to begin franchising Pudgie's Pizza restaurants. (See MPCF Articles of Organization, A0072-A0073; sample sub-license agreement, A0072).

24. MPCI granted MPCF a perpetual, royalty free, nationwide license to use and sublicense others the right to use the Mark in connection with restaurants that offer pizza, pasta, subs, and related menu items. (Sub-License and License Agreement between MPCI and MPCF, A0074-A0078).

25. Since then, MPCF has sold three franchises – one in Clarksville, Maryland, one in Binghamton, New York, and one in Waverly, New York. (David Cleary Dep. p. 14, ln. 19 –23, A0004).

**The Relationship Between Plaintiffs and Tarntino Deteriorates**

26. After Pudgie's Elmira Heights went out of business in the early 1990's, Pudgie's Northside, Plaintiff's Pudgie's, and Defendant's Pudgie's all began to deliver into the Elmira Heights area, which is located between the three restaurants. (David Cleary Dep. p. 61, ln. 14-16, A0016; See maps of Elmira, NY, A0079-A0080).

27. Pudgie's Northside and Defendant's Pudgie's listed Elmira Heights as a delivery area in some advertisements and allegedly had an informal agreement to share the territory between them. (Tarntino Declaration, ¶¶ 5-7, A0086; Defendant's Pudgie's Advertisements, A0225-A0227).

28. Plaintiff Robert Cleary sent Defendant Tarntino and his sister Kristy Tarntino an e-mail on April 2, 2010 explaining that Plaintiff's Pudgie's had delivered into Elmira Heights for years and offering to sit down with Tarntino and draw up boundaries. (Plaintiff Robert Cleary's April 2, 2010 e-mail to Brent and Kristy Tarntino, A0224).

29. While Plaintiff's Pudgie's did not list Elmira Heights as a delivery area in advertisements until 2011, it can demonstrate through delivery records that, beginning at least in 2002 and continuing to date, Plaintiff's Pudgie's received from and

delivered many orders to Elmira Heights. (Sales and Delivery Records 2002-present, A0088-A0177).

30. In 2011, Plaintiff's Pudgie's started listing Elmira Heights as an area they delivered to in its advertisements.  (See examples of advertisements A0178-A0179).

31. Around the same time the relationship between Robert and David Cleary and their first cousin Brent Tarntino began to deteriorate.

**Tarntino's Ersatz Registration Of the Mark**

32. On July 2, 2010, Tarntino filed an application for the Pudgie's Mark in his own name with the USPTO for "Pizza parlors; Restaurant services featuring pizza, pasta and subs." (Tarntino Trademark Registration Application, A0180-A0186).

33. This category is encompassed by the category of TruFoods' 2002 registration, which was for "Restaurant and carry out restaurant services." (Arthur Treacher's Trademark Registration, A0064).

34. Tarntino wanted to register the Mark individually because he wanted to start his own Pudgie's franchise using the Mark. (Tarntino Dep. p. 17, ln.10-12, A0030).

35. He is currently trying to have his brother and sister, who each own one-third of the stock of PPC Horseheads, purchase his one-third share. (Id. at p. 19, ln.19-25, A0030).

36.  There is no evidence in the record that the buyout has occurred.

37. Tarntino has not actually worked at the Defendant's Pudgie's since approximately late December 2011/early January 2012. (Id. at p. 16, ln. 2-16, A0029).

38. Tarntino made a number of false claims in his trademark application (See Tarntino Trademark Application, A0180-A0186).

39. He swore under penalty of perjury that, to the best of his knowledge and belief, no other person was using the Mark in commerce. (Tarntino Dep. p. 8, ln. 6-10, A0027).

40. Tarntino specifically admitted that he became aware of TruFoods registration before he filed his own trademark application. (Tarntino Dep. p. 35, ln. 8-14, A0034).

41. TruFoods' registration of the Mark also provided constructive notice of its use of the Mark in commerce.

42. During his deposition, Tarntino strongly implied that he thought that TruFoods had only registered the Mark for chicken restaurants. (Tarntino Dep. p. 38, ln. 15 - p. 39, ln. 13, A0035).

43. In fact, TruFoods' registration clearly contains the encompassing and general language of "restaurant services", which certainly includes pizza, pasta and sub restaurants. (TruFoods Trademark Registration, A0064).

44. Tarntino knew that nearby Pudgie's Northside was using the Mark in commerce. (Tarntino Declaration, ¶ 7, A0086).

45. Tarntino must have known that MPCF's three franchised restaurants outside of the Elmira area were using the Mark in commerce. (David Cleary Dep. p. 14, ln. 19 –23, A0004).

46. This is because shortly after registering the Mark for himself, Tarntino sent all of MPCF's franchisees a letter in which he claimed to be the true owner of the Mark (Tarntino's March 30, 2011 letter, A0196), and the record shows that he telephoned MPCF's Maryland franchisee to relate the same. (See March 28, 2011 email from the Maryland franchisee to Plaintiffs, A0197).

47. In short, it is clear that when he filed his trademark application, Tarntino knowingly misstated that he believed that nobody else had the right to use the Mark in commerce.

48. Tarntino also misstated in his trademark application that he had prior use of the Mark and that he first began using the Mark in commerce as early as 1980 – notably before TruFoods' date of first use in 1982. (See Tarntino Application, p. 2, A0181).

49. When, at his deposition, counsel him asked his age in 1980, Tarntino was unable or unwilling to answer. (Tarntino Dep. p. 21, ln. 22 - p.22, ln. 1, A0031).

50. When confronted with the indubitable fact that he was only seven years old in 1980 and thus could not possibly have used the Mark himself, Tarntino surmised that he had inherited his mother Bernadette Tarntino's rights and that she had first used the Mark in 1980. (Tarntino Dep. p. 23, ln. 24 – p. 25, ln. 4., A0031).

51. Actually, she had first started using the Mark as a franchisee in the operation of Defendant's Pudgie's in 1973 when she entered into a franchise agreement with PPFC. (See 1983 Franchise Agreement, first page, A0043; Tarntino Dep. p. 24, ln. 10-16, A0031).

52. Until her renewal franchise agreement expired when PPFC was dissolved in the early 1990's and Defendant's Pudgie's became independent, Tarntino's mother was using the Mark only as a licensee.

53. Accordingly, the moment of PPFC's dissolution sometime in the early 1990's is the earliest possible date which the owners of Defendant's Pudgie's could claim for their first use of the Mark.

54. Indeed, Tarntino included a specimen of the Mark on a pizza box evidencing what he alleged was his use of the Mark, but the specimen states on its very face "® Pudgie's Pizza Franchising Corporation 1972" – which further demonstrates that his mother started off using the Mark only as a franchisee. (See Tarntino Registration Application, A0186).

55. Additionally, PPC Horseheads, and not Brent Tarntino the individual, is the only entity that could have possibly inherited any rights in the Mark from Bernadette Tarntino's estate because PPC Horseheads succeeded Bernadette Tarntino in owning and operating the Defendant's Pudgie's restaurant and there is nothing to indicate that Bernadette Tarntino bestowed any intellectual property rights upon Brent Tarntino upon her death.

56. Tarntino equally shares ownership in PPC Horseheads with his two siblings (Tarntino Dep. p. 13, ln. 19 – p. 14, ln. 2, A0029) and has put forth no evidence that he owns all the rights to the Mark individually, i.e. that his siblings ever assigned their rights in the Mark to him.

57. There is no evidence as to why Tarntino used the completely arbitrary date 1980 as his personal date of first use of the Mark.

58. Even though a cursory search would have revealed that TruFoods was the valid owner of the Mark in the same restaurant services category, the USPTO nonetheless granted Tarntino registration of the Mark on February 22, 2011. (Tarntino Registration, A0180-A0186).

**Armed With His Own Registration, Tarntino Makes Demands Upon MPCF's Three Franchised Pudgie's Pizza Restaurants and Publically Claims To Be the Owner of the Mark**

59. Shortly after getting his registration of the Mark, Tarntino sent a letter to all MPCF franchisees advising them that: 1) he was the true owner of the Mark; 2) he was entitled to nationwide priority with respect to the Mark; and 3) the franchisees were not entitled to use the Mark outside of their current geographical area without first obtaining his permission.  He neglected to ask these franchisees to send him their royalties, however. (See March 30, 2011, letter to MPCF franchisees, A0196).

60. Additionally, at least one of the franchisees received a phone call relating the same information. (See March 28, 2011 email from the Maryland franchisee to Plaintiffs, A0197).

61. Tarntino also boasted on his Facebook page that he was the valid owner of the Mark. (See Tarntino's Facebook screen shots, A0198-A0199).

62. Plaintiffs served Tarntino with a cease and desist letter in which Plaintiffs demanded that Tarntino immediately: 1) cancel his trademark registration with the USPTO; 2) cease and desist all claims of exclusive ownership of the Mark; and 3) tell MPCF's franchisees that he is not the lawful exclusive owner of the Mark and that Plaintiffs are the lawful licensee of the Mark. (April 7, 2011 cease and desist letter, A0200-A0203).

63. Tarntino neither responded to the letter nor complied with its demands.

Respectfully submitted,

Dated: June 27, 2012.

/s/ Paul L. Leclair
Paul L. Leclair
LECLAIR KORONA GIORDANO COLE LLP
150 State Street, Suite 300
Rochester, New York 14614
(585) 327-4100
pleclair@leclairkorona.com

- and -

/s/ Jeffrey Zucker
Jeffrey Zucker (pro hac vice)
FISHER ZUCKER LLC
21 South 21st Street
Philadelphia, PA 19103
(215) 825-3100
jzucker@fisherzucker.com
*Attorneys for Plaintiffs*

11