UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MPC FRANCHISE, LLC, and
MP CLEARY, INC.,

                Plaintiffs         DECISION AND ORDER

-vs-

                                                          11-CV-6310 CJS

BRENT TARNTINO,

                Defendant

_____

BRENT TARNTINO and PUDGIE'S PIZZA
CORPORATION - HORSEHEADS, INC.,

                Counterclaim Plaintiffs

-vs-

MPC FRANCHISE, LLC and
MP CLEARY, INC.,

                Counterclaim Defendants

_____

APPEARANCES

For Plaintiffs/Counterclaim
Defendants:                      Jeffrey Zucker, Esq.
                                      Max A. Staplin, Esq.
                                      Maria Jose Morinigo, Esq.
                                      Fisher Zucker LLC
                                      21 South 21st Street
                                      Philadelphia, Pennsylvania 19103

                                      Paul L. Leclair, Esq.
                                      Leclair Korona Giordano Cole LLP
                                      150 State Street, Suite 300
                                      Rochester, New York 14614

For Defendants/Counterclaim
Plaintiffs:                        George R. McGuire, Esq.
                                      Bond, Schoeneck & King, PLLC
                                      One Lincoln Center
                                      Syracuse, New York 13202-1355

INTRODUCTION

This action was a trademark dispute involving Pudgie's Pizza, a formerly family-owned pizza business in Elmira, New York, several of whose individual restaurant locations now belong to first cousins, who are descendants of the original owners. In this action those descendants challenged each other's right to use the Pudgie's name, at least in certain geographic regions, and to franchise others to do so. The Court granted summary judgment as to certain claims, and the parties settled the remaining claims. Now before the Court are the following motions: 1) Plaintiffs' motion (Docket No. [#82]) for attorneys fees; and 2) Defendant's cross-motion [#83] for attorneys fees. Plaintiffs' application is granted in part, and Defendant's application is denied.

BACKGROUND

On May 14, 2014, the Court issued a 49-page Decision and Order setting forth the details of this action, with which the reader is presumed to be familiar. Briefly, on June 21, 2011, MP Cleary and MPC Franchise, who had licensed the Pudgie's trademark from the lawful owner of the mark, TruFoods, commenced this action against Brent Tarntino, alleging, *inter alia*, that Tarntino had fraudulently obtained a duplicative registration of the Pudgie's mark from the U.S. Patent and Trademark Office ("PTO"). Plaintiffs' first cause of action sought a declaratory judgment that Tarntino had no ownership interest in TruFoods' registered mark. The second cause of action sought cancellation of Tarntino's mark based on fraud, pursuant to 15 U.S.C. § 1064(3), and on the fact that the mark was confusingly similar to TruFoods' mark. The third cause of action sought a declaration that Tarntino had engaged in trademark infringement and unfair competition, and an injunction.

Tarntino answered [#8] the Complaint and asserted five counterclaims. The first counterclaim alleged that Plaintiffs were infringing Tarntino's federal trademark registration. The second counterclaim purported to assert a claim for "federal unfair competition," in violation of 15 U.S.C. § 1125(a), based on the fact that Plaintiffs had allegedly begun using the mark in the Elmira Heights neighborhood, where Tarntino was already using the mark. The third counterclaim purported to assert a claim for "common law trademark infringement and unfair competition," again based on the fact that Plaintiffs were using the mark in the Elmira Heights neighborhood. The fourth counterclaim requested a declaratory judgment that Tarntino was not infringing TruFoods' or Plaintiffs' federal trademark rights. The fifth counterclaim purported to assert a claim for "injury to business reputation" under New York General Business Law § 360-l.

On May 30, 2012, Defendant filed a motion [#32] for summary judgment. Defendant maintained that Plaintiffs could not prevail on their claim seeking a declaratory judgment that TruFoods' owns the registered mark, or on their claim seeking cancellation of Defendant's mark based on fraud, because they lacked standing and could not show, as a matter of law, that Defendant committed fraud. Defendant also maintained that Plaintiffs could not prevail on their trademark infringement and unfair competition claims, since they lacked standing, and since they could not show that they had senior rights to the mark. Defendant further asserted that Plaintiffs could not prevail on their common-law claim of unfair competition, since they could not show that he acted in bad faith. Defendant also sought summary judgment on all of his counterclaims.

On June 27, 2012, Plaintiffs filed their opposition to Defendant's summary judgment motion, along with their cross-motion for partial summary judgment on their first two causes

of action.  As mentioned earlier, Plaintiffs' first cause of action sought a declaratory judgment that Tarntino had no ownership interest in TruFoods' registered mark, while the second cause of action sought cancellation of Tarntino's mark based on fraud, pursuant to 15 U.S.C. § 1064(3), and on the fact that the mark was confusingly similar to TruFoods' mark.  Plaintiffs did not move for summary judgment on their third cause of action, purportedly because they recognized that there were triable issues of fact as to that claim.

On March 21, 2013, counsel for the parties appeared before the undersigned for oral argument.  At that time, counsel clarified the nature of their claims for the Court.  For example, counsel agreed that the parties were not contesting each other's common-law rights to do business using the Pudgie's name in their traditional locations.  That is, Plaintiffs were not contesting Defendant's right to use the Pudgie's name in the Village of Horseheads, and Defendant was not contesting Plaintiffs' right to use the Pudgie's mark in Elmira.  However, Defendant was contesting Plaintiffs' right to use the Pudgie's mark in the Elmira Heights neighborhood.

The primary concern of all parties, however, concerned the right to use the Pudgie's name to franchise additional locations.[1]  In that regard, Plaintiffs maintained that Defendant has no right use the Pudgie's name to franchise new locations, since they had already licensed the Pudgie's mark from TruFoods, and since Defendant obtained his registration by fraud.  On the other hand, Defendant maintained that he was the only person entitled to franchise new Pudgie's pizza locations, since his registration was  valid and, unlike TruFoods' registration, pertained specifically to pizza parlors.

---

[1] *See*, Docket No. [#68], transcript of oral argument at p. 28.

On May 14, 2014, the Court issued its Decision and Order [#69], which granted the parties' respective summary judgment motions in part, and denied them in part. More specifically, the Court granted Defendant's motion as to Plaintiffs' first and third causes of action, but denied it as to Plaintiffs' second cause of action. The Court also denied Defendant's motion for summary judgment on his counterclaims. Further, the Court denied Plaintiffs' cross-motion for partial summary judgment as to their first cause of action, but granted it as to their second cause of action, insofar as it alleged fraud. Significantly, as to Plaintiffs' second cause of action, the Court found as a matter of law that Defendant committed fraud on the PTO, and, consequently, the Court canceled Defendant's trademark registration. In doing so, the Court resolved the primary issue of this action in Plaintiffs' favor, since Defendant could no longer claim to have the right to franchise Pudgie's pizzerias.

The Court subsequently scheduled the matter for trial, to begin on October 14, 2014. However, immediately prior to trial the parties reached a settlement as to the remaining claims, though, they each reserved the right to bring a motion for attorney fees and costs as to the previously-decided claims. *See*, Stipulation of Discontinuance [#77].

On November 4, 2014, the parties each filed their respective motions [#82][#83] for costs and attorney fees. Plaintiffs are seeking $109,779.23 in attorney fees and costs, strictly in connection with their successful claim to cancel Tarntino's fraudulent trademark registration. That is, Plaintiffs indicate that the amount they are seeking does not involve attorney fees or costs related to either their first claim, which the Court denied for lack of standing, or their third claim, upon which the Court never made a ruling. Plaintiffs maintain that they are entitled to such payments from Defendant under the Lanham Act, since

5

Defendant acted with fraud or bad faith in registering his mark and necessitating the commencement of this action.

Defendant opposes that application and maintains that he should be awarded attorney fees and costs. In opposing Plaintiffs' motion, Defendant contends that his fraudulent conduct alone does not automatically warrant the exceptional remedy of attorney fees under the federal trademark laws. On this point, Defendant suggests that his conduct does not warrant an award of attorney fees, since his intention in fraudulently obtaining the trademark registration was neither to institute vexatious litigation nor to improperly invoke the power of the trademark laws. Additionally, Defendant contends that the amount of Plaintiffs' demand is unreasonable. For example, Defendant asserts that Plaintiffs' attorney fee demand "is unreasonably high due to the extraordinary [hourly billing] rates and extraneous hours set forth in their request." Def. Memo of Law at p. 3. Specifically as to hourly billing rates, Defendant contends that the rates requested by Plaintiffs' Philadelphia attorneys, the law firm of Fisher Zucker ("Fisher Zucker"), which range between $250 and $425 per hour, should be reduced by 40% across the board, or at least reduced to reflect the rates charged by Plaintiffs' local counsel, which, Defendant maintains, range from $170 to $250 per hour. Defendant further contends that the total number of hours claimed by Plaintiffs' attorneys should be reduced by at least 10%.

Alternatively, Defendant contends that he should be awarded attorney fees and costs, for having won summary judgment as to Plaintiffs' first and third causes of action, which were dismissed for lack of standing. On this point, Defendant argues that since Plaintiffs were the non-exclusive licensees of TruFood's Pudgie's mark, they should have known that they lacked standing to sue for infringement. Defendant further argues that the

Court "grant[ed] [his] motion for summary judgment almost in its entirety," but that is clearly incorrect, as the Court denied his motion as to the most significant claim in the action, *i.e.*, the fraud cancellation claim, and also denied his motion for summary judgment on all of his counterclaims.

## DISCUSSION

There is no dispute that pursuant to 15 U.S.C. § 1117(a), in "exceptional cases" the Court may, but is not required to, award reasonable attorney fees "to the prevailing party." To make such an award, the Second Circuit requires that there be "evidence of fraud or bad faith" that is "willful." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 111 (2d Cir. 2012).

Having carefully reviewed the record in preparation for drafting its summary judgment decision, the Court is intimately familiar with the facts of this case. Consequently, the Court has no difficulty in concluding that Plaintiffs are the prevailing parties within the meaning of § 1117(a), and that this is an exceptional case due to the fact that Defendant willfully committed fraud on the PTO in order to seize Plaintiffs' pizzeria franchise business for himself. In its prior Decision and Order, the Court discussed the many ways in which Defendant's application to the PTO was fraudulent. The Court reiterates here that Defendant's conduct in that regard was obviously willful, and was undertaken after Defendant became angry that Plaintiffs began advertising that they would make pizza deliveries in the Elmira Heights neighborhood. Immediately after obtaining his fraudulent trademark registration, Defendant contacted Plaintiffs' franchisees and falsely informed them that he was the true owner of the Pudgie's mark. Such conduct directly precipitated Plaintiffs' commencement of this lawsuit. Furthermore, it is clear that the

validity of Defendant's trademark registration was the central issue in this case. By comparison, Defendant's counterclaims, involving pizza sales in a single neighborhood, were relatively inconsequential, and Defendant did not prevail on them in any event. Accordingly, Plaintiffs are entitled to an award of attorney fees.

Conversely, the fact that Defendant won summary judgment on Plaintiffs' first and third causes of action does not warrant an award of attorney fees under § 1117(a). In this regard, the Court does not consider Defendant to have prevailed on any significant aspect of this case, nor does it find that Plaintiffs engaged in fraud or other bad-faith conduct merely because two of their claims were denied for lack of standing. Plaintiffs claimed that they had standing to pursue infringement claims, pursuant to statute, 15 U.S.C. § 1125(c), and pursuant to their licensing agreement with TruFoods.[2] The Court disagreed with Plaintiffs, but such fact does not establish conduct sufficient to award attorney fees against them.[3] *See*, *Banff, Ltd. v. Colberts, Inc.*, 810 F.Supp. 79, 80 (S.D.N.Y. 1992) ("This provision was designed, in part, to protect innocent defendants against unfounded suits brought by trademark owners for harassment and the like. Thus, a case is 'exceptional' for the purpose of recovering a prevailing defendant's attorney fees only if the plaintiff's

---

[2] *See*, Pl. Memo of Law [#46-4] submitted in opposition to Defendant's summary judgment motion, at pp. 16-17. The license agreement between TruFoods and Plaintiffs indicated that if a third party infringed the Pudgie's mark, and if TruFoods declined to pursue legal action against such third party, that MP Cleary had the right to commence or defend such litigation.

[3] Defendant now argues that Plaintiffs should have known "from the beginning of this case that almost every claim they made against Defendants was invalid." Def. Memo of Law [#83-1] at p. 1. Such argument sidesteps the point that Plaintiffs prevailed on what both sides agreed was the most important issue in the action. Additionally, if Plaintiffs' claims were as baseless as Defendant now maintains, the Court would have expected Defendant to file a motion to dismiss pursuant to Rule 12(b)(6), but he did not. Defendant moved to dismiss, but on the basis of defective service, and he subsequently withdrew that motion. Later, Defendant opposed Plaintiffs' motion to amend the Complaint, but not because the proposed claims lacked merit. Accordingly, the Court finds that Defendant's conduct in this lawsuit belies the contention that Plaintiffs' claims were patently baseless.

claim was baseless, capricious, unreasonable, or otherwise pursued in bad faith.") (citations, footnote and internal quotation marks omitted), *affirmed*, 996 F.2d 33 (2d Cir. 1993), *cert den.*, 510 U.S. 1010, 114 S.Ct. 599 (1993); *see also, Parker Waichman LLP v. Gilman Law LLP*, No. 12–CV–4784(JS)(AKT), 2014 WL 502382 at *1 -2 (E.D.N.Y. Feb. 7, 2014) ("Courts generally award attorneys' fees to a defendant in a Lanham Act action only where there is some evidence that the plaintiff filed the action for an improper purpose.  An improper purpose may be inferred if the plaintiff's allegations are so baseless or totally devoid of legal merit that one could only conclude that the plaintiff commenced the action with an ill motive.  However, a plaintiff's failure to prevail on its claims, standing alone, is not enough to anchor a claim of bad faith.") (collecting cases; citations and internal quotation marks omitted).  Here, Plaintiffs clearly had a legitimate basis to commence this action, even though some of their claims lacked merit.  Consequently, Defendant's application for attorney fees is denied.

As for the amount of attorney fees and costs to be awarded to Plaintiffs, the Court has carefully reviewed the invoices submitted by Fisher Zucker, as well as the invoices submitted by Defendant's counsel in support of Defendant's unsuccessful motion for attorney fees.  In the Court's opinion, the amount of time spent on this litigation, and the amounts billed, by the two sides in this action are very similar.  The amounts actually billed by Fisher Zucker, not counting time spent in connection with the motion for attorney fees, and including costs, was $83,724.23.  Plaintiffs also incurred fees and costs for local counsel in the amount of $6,883.75. The amounts actually billed by Defendant's attorneys, not counting time spent in connection with the motion for attorney fees, and including costs, was $86,041.28.  Defendant's attorneys reduced that amount, for purposes of their

cross-motion for attorney's fees, to $70,045.00, but that reduced figure is essentially meaningless in the Court's view, since Defendant's motion had very little chance of success, given the discussion above.

Defendant's law firm, located in Syracuse, New York, utilized five attorneys, one paralegal, and one discovery project manager. Defendant's law firm's hourly billing rate for attorneys, based on their experience, was $385, $310 and $180, while the other two employees were billed at $155/hr and $150/hr, respectively. Although, again, Defendant's attorneys reduced those rates for purposes of their application for attorney fees. Fisher Zucker, which is located in Philadelphia, utilized ten attorneys and one paralegal. At the time of the motion for attorney fees, Fisher Zucker's hourly billing rates for attorneys, based on their experience, was $425, $400, $375, $340, $325 (2 attorneys), $315, $295 (2 attorneys) and $250, respectively.[4] Fisher Zucker's paralegal rate was $150/hr. However, those rates were lower when the action began in 2011. The vast majority of the work for Fisher Zucker was performed by attorney Jeffrey Zucker ("Zucker"), who has specialized in franchise litigation and trademark litigation for twenty years. During the first three years of the lawsuit, Zucker's hourly rate ranged between $350 and $370, and in 2014 he increased that to $400. In many instances, though, Zucker reduced his hourly rate by 50%.

In connection with time spent on the preparation of the instant application, Fisher Zucker seeks $26,055.00. In that regard, when Plaintiffs filed their application, they were seeking only $8,500.00 in attorney fees for the preparation of the fee motion, based upon twenty-five hours of attorney time. When Plaintiffs filed their reply papers, that amount had

---

[4]The hourly rate charged by Plaintiffs' local counsel was significantly lower, but unlike the attorneys at Fisher Zucker, those attorneys do not specialize in franchise law or trademark law.

more than tripled, to the amount now being sought, of $26,055.00, based on an additional 45.6 hours of attorney time.  Overall, Plaintiffs' demand for attorney fees just in connection with the fee motion is $26,055.00, based upon 70.6 hours of work by two attorneys, whose hourly rates are $325 and $400, respectively.

District Courts have "considerable discretion in determining what constitutes reasonable attorney's fees in a given case." *K.L. v. Wawick Valley Cent. School Dist.*, 584 Fed.Appx. 17, 18 (2d Cir. Nov. 25, 2014).  Where, as here, the prevailing party's attorneys are from outside of the judicial district, the Court must consider, among other factors, whether the party's decision to retain such counsel was reasonable, or whether they should have retained less-expensive counsel from inside the district:

> While the district court should generally use the prevailing hourly rate in the district where it sits to calculate what has been called the "lodestar"—what we think is more aptly termed the "presumptively reasonable fee"—the district court may adjust this base hourly rate to account for a plaintiff's reasonable decision to retain out-of-district counsel, just as it may adjust the base hourly rate to account for other case-specific variables.

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany County Bd. of Elections*, 522 F.3d 182, 183-184 (2d Cir. 2008); *see also, id.* at 184 ("We therefore suggest that the district court consider, in setting the reasonable hourly rate it uses to calculate the 'lodestar,' what a reasonable, paying client would be willing to pay, not just in deciding whether to use an out-of-district hourly rate in its fee calculation.").  Further as to this point, the Second Circuit has stated:

> [A] district court may use an out-of-district hourly rate—or some rate in between the out-of-district rate sought and the rates charged by local attorneys—in calculating the presumptively reasonable fee if it is clear that a reasonable, paying client would have paid those higher rates. We

11

>presume, however, that a reasonable, paying client would in most cases hire counsel from within his district, or at least counsel whose rates are consistent with those charged locally. This presumption may be rebutted—albeit only in the unusual case—if the party wishing the district court to use a higher rate demonstrates that his or her retention of an out-of-district attorney was reasonable under the circumstances as they would be reckoned by a client paying the attorney's bill.

*Id.* at 190-191. Following the *Arbor Hill* decision, the Second Circuit clarified the showing that an applicant must make in order to justify an award based on higher out-of-district hourly billing rates:

>[W]hen faced with a request for an award of higher out-of-district rates, a district court must first apply a presumption in favor of application of the forum rule. In order to overcome that presumption, a litigant must persuasively establish that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result.  In determining whether a litigant has established such a likelihood, the district court must consider experience-based, objective factors.  Among the objective factors that may be pertinent is counsel's special expertise in litigating the particular type of case, if the case is of such nature as to benefit from special expertise. A litigant cannot overcome the presumption through mere proximity of the districts, nor can a litigant overcome the presumption by relying on the prestige or "brand name" of her selected counsel. . . . The party seeking the award must make a particularized showing, not only that the selection of out-of-district counsel was predicated on experience-based, objective factors, but also of the likelihood that use of in-district counsel would produce a substantially inferior result. Unless these limitations are observed, the award of attorney's fees would not respect what we described in *Arbor Hill* as the 'touchstone' of the doctrine, that district courts should award fees just high enough to attract competent counsel.  Among the ways an applicant may make such a showing is by establishing that local counsel possessing requisite experience were unwilling or unable to take the case, or by establishing, in a case requiring special expertise, that no in-district counsel possessed such expertise.

*Simmons v. New York City Transit Authority*, 575 F.3d 170, 175-176 (2d Cir. 2009) (citations omitted).

Defendant contends that the hourly rates being requested by Fisher Zucker are unreasonable, because they are higher than the rates usually charged within this district, and that Plaintiffs have not made the particularized showing required to justify higher out-of-district fees. Defendant contends, therefore, that Fisher Zucker's hourly rates should be reduced by 40%, to more closely reflect those charged by Plaintiffs' local counsel, who are located in Rochester, and whose rates range from $250 for an experienced partner to $170 for an associate.

In considering this objection, the Court observes that Plaintiffs' initial moving papers really provide no explanation for why the Court should award attorney fees based on an out-of-district hourly rate that is higher than the in-district rate.[5] In fact, Plaintiffs' moving papers do not address whether Fisher Zucker's rates are higher than those within this district. However, in their reply papers, Plaintiffs contend that Fisher Zucker's "attorney rates are reasonable because they are comparable to those charged by Tarntino's counsel and those awarded by courts in this district." Pl. Memo of Law [#85] at p. 2.  More specifically, Plaintiffs point out that Defendant's primary attorney, Mr. McGuire, whose office is located in Syracuse, had a customary hourly billing rate of $385 throughout this litigation, and the Court notes that Mr. McGuire began practicing law a few years after Mr. Zucker. The Court also notes, however, that Mr. McGuire's office is in the Northern District, not the Western District. Plaintiffs further contend that at least one other court in

---

[5] *See, e.g.*, Pl. Memo of Law [#82] at p. 6.  Plaintiffs' initial motion papers primarily argue why Plaintiffs are entitled to attorney fees generally,  but do not discuss the amount being requested.

this district has found hourly rates comparable to those charged by Fisher Zucker to be reasonable. (*citing, Davis v. Eastman Kodak Co.*, 758 F.Supp.2d 190 (W.D.N.Y. 2010) (Feldman, M.J.). Furthermore, Plaintiffs argue that "Fisher Zucker is one of a small number of firms nationwide that specialize in franchise law," and "[t]hus, nearly all of Fisher Zucker's clients reside outside of Pennsylvania."[6]

Plaintiffs have not made the particularized showing required by *Arbor Hill* and *Simmons*, and consequently their argument regarding Fisher Zucker's hourly rates rises or falls on whether those rates are comparable to those being charged within this district. Plaintiffs maintain that Fisher Zucker's rates are in line with hourly rates in this district. On that point, however, Plaintiffs' reliance on *Davis v. Eastman Kodak* is misplaced, because that case is factually inapposite, and because the hourly rates approved by the Court in that action were higher than those charged within this district. *See, Davis v. Eastman Kodak*, 758 F.Supp.2d at 201 ("I find that the presumptively reasonable fee is, in fact, *in between* the out-of-district rate sought and the rates charged by local attorneys.") (emphasis added). Moreover, in order to get the Court in *Kodak* to make such a finding, the plaintiff's counsel in that action had to first rebut the "forum rule presumption," which Plaintiffs here have not done. *See, id*. at 198 ("The record, as now supplemented, confirms that class counsel have rebutted the forum rule presumption."). Accordingly, the *Kodak* case is not helpful to Plaintiffs.

Having carefully reviewed the Fisher Zucker submissions in light of the specialized nature of the firm's practice, and having considered all of the relevant factors that courts

---

[6]Pl. Reply Memo [#85] at p. 14.

must consider when making a fee award, as well as decisions of other courts regarding presumptively reasonable fees in this district, the Court finds that across-the-board reductions in Fisher Zucker's requested hourly rates are appropriate. Specifically, the Court applies a 25% reduction in the hourly rates of the Fisher Zucker attorneys who have ten years or more of experience practicing law, a 30% reduction for attorneys with less than ten years of experience practicing law, and a 20% reduction for paralegals. Such reductions will result in hourly rates that are in line with those billed for attorneys and paralegals in this district, but which are at the upper end of the spectrum so as to take into account the specialized nature of Fisher Zucker's practice. *See, e.g., Granite Music Corp. v. Center Street Smoke House, Inc.*, 786 F.Supp.2d 716, 738-739 (W.D.N.Y. 2011) (Finding, in intellectual property action, that hourly rates of $285-$300 for partners, $185-$195 for associates and $120 for paralegals were "in line with recent attorneys fees awarded by courts in this district.").

      Defendant also contends that the number of hours billed by Fisher Zucker is unreasonable. The Court does not agree, with one exception. Namely, the Court finds that the number of hours that Plaintiffs are claiming in connection with the attorney fees applications is excessive. As discussed earlier, for preparing their own attorney fee motion and opposing Defendant's motion, Plaintiffs are seeking $26,055.00, based upon 70.6 hours of work, approximately 60 of which were billed by an associate, PV. That number of hours is excessive. Accordingly, in addition to the reduction in hourly rates discussed above, the number of hours billed by PV, in connection with the instant motion, shall be reduced by 33 hours.

As for Plaintiffs' local counsel, Leclair Korona Giordano Cole LLP, the requested hourly rates and number of hours are approved.

CONCLUSION

Defendant's application for attorney fees and costs [#83] is denied. Plaintiffs' application for attorney fees and costs [#82] is granted as set forth above. The parties are directed to settle and submit a proposed order within ten days of the date of this Decision and Order.

SO ORDERED.

Dated:   February 4, 2015
         Rochester, New York

                                          /s/ Charles J. Siragusa
                                          CHARLES J. SIRAGUSA
                                          United States District Judge